UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------
In re

    William K. Walsh                                    Case no. 05-26595 K
                      Debtor
------------------------------------------------------------------
Michael H. Arnold

                      Plaintiff

                -vs-                                        AP No. 06-2044 K

George S. Barberi
                      Defendant
------------------------------------------------------------------

OPINION AND ORDER GRANTING SUMMARY JUDGMENT
IN FAVOR OF DEFENDANT

William K. Brueckner, Esq.
180 Canal View Boulevard, Suite 600
Rochester, NY   14223

Attorney for Plaintiff

Mark K. Broyles, Esq.
Relin & Goldstein
1800 First Federal Plaza
Rochester, NY   14614

Attorney for Defendant

Absent knowledge of a fraudulent scheme, buying a house from a friend for less than fair-market value, and leasing it back to the friend, may involve "fair consideration" or "reasonably equivalent value" even if the buyer knows that the seller is having "credit problems with his trade creditors." [Barberi Transcript, Nov. 8, 2006, p. 12, l. 19.] It depends on the consideration paid. And in this case, the transaction survives attack as a "fraudulent transfer."

## DISCUSSION

Other than as to assets with an established market price (such as publicly traded securities), buyers tend to pay full fair market value only if they wish to enjoy the use of the asset. If they do not wish to enjoy the use of the asset, then their purchases are "investments." No "investor" pays "full fair market value" unless the relevant "market" is defined as the market of like-minded investors.

And so when an apartment building or office building goes up for sale, "full fair market value" is neither the value of the property based on "highest and best use of the land" nor the cost of, or depreciated value of, the structure, plus the land. It is decided by capitalization rates that are based on the various types of yields that a purchaser might expect to enjoy from all the different investment opportunities that exist "out there" for someone with money to invest.

It is not at all uncommon for investors to buy up residential homes that they wish to rent-out to produce an income stream, and that they might be able to sell at some point for an additional profit.

The Trustee's theory here is that an investor who takes advantage of knowledge that the seller needs cash in order to "buy low - - sell high," and who consequently pays less than what an appraiser says would be "fair market value" when offered to people who wish to buy the home to live in, has, *ipso facto,* received a "fraudulent transfer." This Court disagrees, and holds that "fair saleable value" or "fair market value" or "reasonably equivalent value" is the price that a willing buyer has paid to a willing seller even if the buyer knows that for the seller, this might be a "distress sale." However, this is not true if the finder of fact concludes that the buyer had reason to believe that the seller was engaged in a scheme to defraud creditors.

Though the Trustee here asserts that the Defendant "should have known," that is a different issue, not presented here, because the difference between the price paid here and what a prospective "homeowner" was likely to have paid is not a shocking disparity.[1] Borrowing from a different aspect of bankruptcy jurisprudence (that enunciated by the Supreme Court for Rule 9019 purposes), the consideration paid here did not fall below "the lowest point in the range of reasonableness." *See Anaconda-Ericsson, Inc. v. Hessen (In re Teltronics Servs., Inc.),* 762 F.2d 185, 189 (2d Cir. 1985) ("A court assesses a settlement by determining whether it 'fall[s] below the lowest point in the range of reasonableness.'") (citing *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir.) (Friendly, J.) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.), *cert. denied*, 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 488 (1972)), cert. denied, *Cosoff v. Rodman*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983))).

---

[1] The Court offers the *dicta* that some of the quotes from other cases dealing with "inquiry notice" have the cart before the horse. One should not begin with the buyer's state of mind and knowledge of facts, and then decide what the "fair value" should have been. Rather, one should begin with price paid, and whether it was "reasonably fair." If it was, the inquiry ends, unless the finder of fact concludes the buyer confederated in a fraud upon the seller's creditors.

The appraisal establishes that the property would likely have sold for no more than $135,000 if marketed in the usual manner to prospective purchasers who wanted to live there. The Defendant paid $115,000 plus a leaseback to the seller at a fair rental value of $ 650 per month.[2] The Defendant did not buy the property to "flip-it." Nor is there any evidence that the Defendant knew anything more about the Debtor's finances than that he needed "capital . . . . to continue on in his career which was selling golf equipment." [Barberi Transcript, Nov. 8, 2006, p. 12, l. 10.]

Had it been shown that the Debtor had said "I need cash because my wife and I are dumping everything and moving to Bimini," the result might be different, as it might if the seller had said, "It's a deal, and send the check to my account in the Cayman Islands."

The Court does not desire to offer an analogy to "foreclosure sales," which rarely yield "fair market value" for homes, but which have been conclusively found to yield "fair value," as a matter of law, if properly conducted. (They are not analogous because in New York they are judicially supervised.) This Court would offer only that although judicial supervision is "sufficient" to protect the purchaser from fraudulent transfer attack, it is probably not "necessary" at least where, as here, the Defendant paid substantial moneys in excess of the mortgage balance. (Such is not often true in foreclosure sales.)

It would, of course, be helpful to the Bar and the community if this Court were

---

[2] The $115,000 price reflected the need for a new roof and driveway, and the fact that if the Debtor sold through a broker, there would be brokerage fees. (*In re Lopez* is distinguishable on at least two grounds. (1) In *Lopez*, no sale of the house was contemplated, nor did any occur, and (2) hypothetical costs of sale payed no role in the parties' deliberations regarding what would be "fair consideration" for the transfer. *Gordon v. Mattice (In re Lopez)*, 02-2164 AP (Bankr. W.D.N.Y. Aug. 13, 2003)).

able to formulate principles of general applicability in such cases, but it cannot.

The Court is satisfied upon all the evidence, after trial, that the transaction at Bar is immune from fraudulent transfer attack.  The Complaint is dismissed.

SO ORDERED.

Dated:      Buffalo, New York
            August 10, 2007

                                                          s/Michael J. Kaplan
                                                     _____
                                                               U.S.B.J.